909 F.2d 1203
 Jack MADEWELL, James Keith Sampson, Russell McKinnon, George
A. Wilson, Richard S. Brasher, Jr., Anthony Landis, James C.
Walters, Cliston Ray Swanson, Odell Hampton, Zakee Kaleem
Abdullah, Eddie Bo Lawshea, Raymond Proffitt, Earnest
Kisling, Freddie Robinson, James Phelps, Winston Holloway, Appellant,
v.
Bobby ROBERTS, Chairman; James Mason; Rev. Hezekih
Steward, Jr., David McClinton; Morris Dreher; Sheriff
Floyd Johnson; Dr. Nancy Talbert, Board Members, Arkansas
Department of Correction; A.L. Lockhart, Director, Arkansas
Department of Correction; Larry Norris, Warden; Robert D.
Perry, Chief Security Officer, Maximum Security Unit;
George Brewer, Classification Administration, Arkansas
Department of Correction; Leonard Evans, Classification
Officer, Maximum Security Unit, Arkansas Department of
Correction, Appellees.
 No. 89-1671.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1990.
Decided July 31, 1990.
 
 Patrick R. Kirby, Little Rock, Ark., for appellant.
 R.B. Friedlander, Little Rock, Ark., for appellees.
 Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Winston Holloway and fifteen other inmates at the Maximum Security Unit of the Arkansas Department of Correction requested class certification and sought damages and declaratory and injunctive relief under 42 U.S.C. Sec. 1983. They alleged that defendant prison officials and members of the Board of Correction, named in their individual and official capacities, violated plaintiffs' rights to due process and equal protection, and subjected them to cruel and unusual punishment and to retaliatory actions. Only Holloway appeals from the district court's grant of summary judgment in favor of defendants. We affirm in part, reverse in part, and remand for further proceedings as to defendants Perry, Norris and Lockhart.
 
 I.
 
 2
 Plaintiffs alleged that they are housed in cellblock 3 and, because of partial medical disability which prevents them from performing field labor, they are assigned to "inside utility" work (vegetable processing); while so assigned, plaintiffs are denied the opportunity to achieve Class I status;[1] and defendants have conspired, through "an officially approved program of invidious discrimination" (based on plaintiffs' medical disability), to deny plaintiffs the privileges and better living conditions accorded Class I inmates. They alleged that individual plaintiffs have been repeatedly denied their right to appear before the classification committee for consideration for advancement in class status. Plaintiffs also alleged they are forced to perform their inside utility work while sitting directly on the concrete floor of the prison gym; they must work during nighttime hours, are prevented from sleeping in the daytime, and are endangered by being housed with mentally ill inmates. Plaintiffs further alleged that defendants or their agents intercepted a portion of this lawsuit while it was being prepared; afterward, defendants Norris and Perry, with defendant Lockhart's approval, began "an organized program of retaliation against plaintiffs," which included giving them false disciplinary reports, increasing their work hours, serving them spoiled food, and encouraging or permitting other inmates and guards to make excessive noise to prevent plaintiffs from getting adequate sleep.
 
 
 3
 Holloway stated in a subsequent affidavit that he is assigned to inside utility partly because he has arthritis, and that working during the night in an unheated gym, sitting directly on the cold concrete floor without even a coat, is painful and dangerous to his health.
 
 
 4
 Defendants moved for dismissal or summary judgment and submitted supporting affidavits. In one of those affidavits, defendant Perry acknowledged that Class I inmates have more privileges, and attributed the differences to their reduced security risk and their job assignments. Perry denied many of plaintiffs' allegations regarding their living and working conditions, but admitted that plaintiffs sit on the floor to work, in part because non-anchored chairs could be used as weapons. Perry attested that advancement to Class I status requires placement in a Class I job; a decision was made that inside utility is not a Class I job; inmates assigned to inside utility have, despite their medical condition, as much opportunity for class advancement as other inmates in the maximum security unit, and can be considered for any Class I-C job for which they are medically fit; many Class I-C jobs do not require medical status of M-1; and inmates assigned to inside utility, like other inmates, cannot be promoted to Class I-C until a suitable I-C job becomes available. Perry further attested that when an inmate is recommended for class advancement, his current practice is to remove the inmate from consideration only when the inmate is ineligible because of having received disciplinary action within certain time limits; even when the inmate is eligible, class advancement is not automatic but may be denied based on other criteria specified in the Inmate Handbook; and in the past, Perry may have removed names from the classification list because of the unavailability of I-C jobs. Perry denied knowing of the interception of any legal work, serving spoiled food, or encouraging noise to prevent plaintiffs from sleeping.
 
 
 5
 In affidavits filed in response to the summary judgment motion, plaintiff Madewell disputed defendant Perry's proffered "security" rationale for different treatment, and stated Perry discriminates against plaintiffs because of their medical status; plaintiff Landis disputed that his denial of class advancement or consideration was due to his ineligibility or the unavailability of Class I jobs, and asserted it was instead due to discrimination and retaliation; and plaintiff McKinnon stated he was given a false disciplinary so that he would not receive a class promotion. Holloway's affidavit disputed Perry's justifications for plaintiffs' different treatment and working conditions; asserted that minor disciplinaries, for which no due process is afforded, have been fabricated to prevent eligibility for class promotion consideration; and reiterated that his serious arthritic condition is greatly and painfully aggravated by sitting on the concrete. Holloway attached to his affidavit copies of his thirty-four unsuccessful grievances related to claims in the complaint.
 
 
 6
 The magistrate recommended to the district court that summary judgment be granted to defendants on all claims, and that the request for class certification be denied as moot. Holloway filed objections and a motion for a hearing, asserting there were issues of material fact that the magistrate had improperly resolved through credibility determinations. Holloway asserted he has single-copy documents showing defendants' participation in the alleged wrongs, which, because of the likelihood of being lost if mailed, would be submitted at a hearing; he asserted these include a medical order that a chair be provided for Holloway at work, which he alleges was ignored, and a letter from defendant Norris stating that "utility is for medical problems which preclude Class I." Holloway also asserted that minor disciplinaries should require due process guarantees because they cause ineligibility for class consideration, which in turn affects major issues such as release date, parole eligibility, good time, job assignment, and visitation privileges. Seeking to rebut defendants' claim that plaintiffs have the opportunity to advance to Class I when a Class I job becomes available, Holloway asserted that when he was put up for consideration for an available Class I job, defendant Perry blocked his consideration by the classification committee.
 
 
 7
 The district court adopted the magistrate's recommended disposition, concluding that the facts did not support the general claims of conspiracy, cruel and unusual punishment, or discrimination against inmates assigned to inside utility. The district court further concluded that plaintiffs have no liberty interest in their class status; plaintiffs' allegations of medical problems being aggravated by the inside utility work assignment are really claims of incorrect medical classification, which should be asserted against medical personnel rather than the defendants named in this case; and to the extent allegations of retaliation were not rebutted by defendants' affidavits, the claims were conclusory and failed to state violations of a constitutional magnitude.
 
 II.
 
 8
 Holloway's brief on appeal purports to argue on behalf of all of the plaintiffs; it states that several of the plaintiffs submitted notices of appeal, but only Holloway's was accepted. Because the notice of appeal filed with this court states that "Winston Holloway, a plaintiff in the above-entitled matter [Jack Madewell, et al. v. Bobby Roberts, et al.] appeals," the individual claims of plaintiffs other than Holloway are not before this court. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 317-18, 108 S.Ct. 2405, 2409-10, 101 L.Ed.2d 285 (1988) (federal appellate court lacks jurisdiction over party not specified in notice of appeal).
 
 A. Retaliation
 
 9
 This court has recognized the established rule that " 'an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.' " Freeman v. Blair, 793 F.2d 166, 178 (8th Cir.1986) (quoted case omitted), vacated on other grounds, 483 U.S. 1014, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989) (disciplinary action cannot be brought against prisoner for filing grievance determined to be meritless); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir.1986) (per curiam) (otherwise constitutional actions such as searching inmate's cell or confiscating nonlegal materials, when taken in retaliation for filing lawsuits, violate inmate's right of access to courts and first amendment rights); Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir.1983) (per curiam) (prison officials may not impede access to courts through retaliation, such as harassment or less favorable treatment, for inmate's litigation activities).
 
 
 10
 We disagree with the district court's conclusion that all of the allegations of retaliation were either conclusory or rebutted by defendants' affidavits. Plaintiffs alleged that defendants blocked reclassification opportunities and acted to worsen plaintiffs' living and working conditions in specific ways in retaliation for their litigation activities. Perry's denials of most of plaintiffs' allegations were disputed by plaintiffs' subsequent affidavits. The district court could resolve this dispute only by deciding to believe Perry's affidavit rather than plaintiffs' affidavits, and such a credibility determination is inappropriate in ruling on a motion for summary judgment. See, e.g., White v. Farrier, 849 F.2d 322, 326 (8th Cir.1988). We therefore hold that Holloway is entitled to a hearing as to these allegations. We emphasize that the alleged manifestations of defendants' retaliation (such as less favorable treatment) need not themselves amount to constitutional violations. The violation lies in the intent to impede access to the courts. Sanders, 724 F.2d at 666.
 
 B. Cruel and Unusual Punishment
 
 11
 Cruel and unusual punishment encompasses (1) deliberate indifference to serious medical needs, and (2) compelled labor beyond an inmate's physical capacity, that is, labor which is (a) beyond the inmate's strength, (b) dangerous to his or her life or health, or (c) unduly painful. East v. Lemons, 768 F.2d 1000, 1001 (8th Cir.1985); Ray v. Mabry, 556 F.2d 881, 882 (8th Cir.1977) (per curiam).
 
 
 12
 As we read the record, plaintiffs did not complain about their medical classification or the work assignment itself (processing vegetables), but about the conditions under which they were forced to perform the work--conditions which they alleged were unnecessary, painful, and harmful to their health. Although the unpleasant working atmosphere could not be said generally to violate the eighth amendment rights of partially medically disabled inmates, certain aspects of the work conditions might result in the " 'unnecessary and wanton infliction of pain' " upon a particular individual. See Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (quoted case omitted).
 
 
 13
 Holloway alleged without contradiction that his serious arthritis is greatly and painfully aggravated by sitting directly on cold concrete for four or more hours. He alleged that the workplace was unheated and inmates were not allowed to wear coats. We believe a jury could reasonably conclude that such conditions caused otherwise constitutional labor to become dangerous to Holloway's health or unduly painful to him. Thus, this claim should be further considered on remand.
 
 C. Class Status
 
 14
 Holloway argues that inmates have a right to consideration for Class I status, but such consideration and opportunity to achieve Class I status are denied them when, because of their medical conditions, they are assigned to inside utility. He alleged that Perry consistently blocks the ability of inside utility workers to get available Class I jobs for which they are eligible, thereby precluding attainment of Class I status. Furthermore, eligibility for reclassification is postponed for at least thirty days whenever minor disciplinary action is taken against an inmate.[2] Holloway alleged that Perry and Norris, with Lockhart's approval, have falsified minor disciplinaries to render plaintiffs ineligible for class consideration. Holloway argues that this ineligibility has major effects, and thus minor disciplinaries should require due process protections.
 
 
 15
 Holloway has not pointed to any statute, regulation, or policy statement that sufficiently limits prison officials' discretion so as to create a protected liberty interest in class status. Cf. Parker v. Corrothers, 750 F.2d 653, 660-61 (8th Cir.1984) (Arkansas parole). In fact, Holloway concedes on appeal that inmates have no right to a particular class. Thus, the link between class status and the availability of certain jobs does not present a due process issue. Nevertheless, an equal protection issue may be presented. Although an inmate's medical condition could be rationally related to his job assignment, medical condition may be an arbitrary factor for determining class status. Similarly, although we reject the argument that minor disciplinaries require due process protections, see Wolff v. McDonnell, 418 U.S. 539, 571 n. 19, 94 S.Ct. 2963, 2982 n. 19, 41 L.Ed.2d 935 (1974), if as Holloway alleges such disciplinaries are falsely filed against disabled inmates to preclude their advancement in class status, an equal protection claim may arise. These equal protection claims should also be considered on remand.
 
 D. Responsibility for Alleged Violations
 
 16
 Although plaintiffs asserted that a conspiracy existed among defendants to violate their rights, the factual allegations did not sufficiently suggest a "meeting of the minds" to sustain this claim. See, e.g., Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir.1985) (per curiam).
 
 
 17
 Liability under Sec. 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77, 96 S.Ct. 598, 603-04, 606-07, 46 L.Ed.2d 561 (1976); Cotton v. Hutto, 577 F.2d 453, 455 (8th Cir.1978) (per curiam) (respondeat superior theory does not apply in Sec. 1983 suits). There is no indication in the record that the defendant board members or classifications officers had any personal connection with the working conditions alleged to amount to cruel and unusual punishment for Holloway, or with the alleged retaliatory and discriminatory actions. Holloway alleged, however, that defendant Perry was directly responsible for the conditions and at least some of the actions, and defendants Norris and Lockhart had personal knowledge of them through their review of the relevant grievances. Thus, except as to their liability, in their official capacities, for damages, see Nix v. Norman, 879 F.2d 429, 433 (8th Cir.1989), Perry, Norris and Lockhart were not entitled to summary judgment on these issues.
 
 
 18
 Accordingly, the judgment is affirmed in part and remanded in part for further proceedings consistent with this opinion.
 
 
 
 [1]
 Ark.Stat.Ann. Sec. 12-29-202 provides that inmates are to be classified "according to behavior, good discipline, medical condition, and job responsibility." For each month served, inmates in Class I are eligible to earn thirty days meritorious good time, Class II inmates may earn twenty days, Class III inmates may earn eight days, and Class IV inmates cannot earn good time
 
 
 [2]
 In addition, according to the Inmate Handbook, possible minor discipline includes warning and reprimand, loss of privileges, and extra work duty. Though it postpones reclassification eligibility, a minor disciplinary cannot result in punitive isolation or loss of accrued good time or class status