# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3002

_____

| | | |
|---|---|---|
| German Williams, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Larry Norris, Director, Arkansas | * | |
| Department of Corrections; Willis | * | |
| Sargent, (originally sued as Willie | * | |
| Sargent), Warden, Jefferson | * | |
| Correctional Facility, Arkansas | * | |
| Department of Corrections; Steve | * | |
| Williams, Classification Officer, | * | |
| Jefferson Correctional Facility, | * | Appeal from the United States District |
| Arkansas Department of Corrections, | * | Court for the Eastern District of |
| | * | Arkansas. |
| Defendants, | * | |
| | * | |
| David Cruiseturner, Assistant Director, | * | |
| Jefferson Correctional Facility, | * | |
| Arkansas Department of Corrections; | * | |
| L. Smith, Captain, Jefferson | * | |
| Correctional Facility, Arkansas | * | |
| Department of Corrections, | * | |
| | * | |
| Defendants - Appellants, | * | |
| | * | |
| Pearson, Mr., Construction Supervisor, | * | |
| Jefferson Correctional Facility, | * | |

Arkansas Department of Corrections; D.    *
Davis, Charge Nurse, Jefferson          *
Correctional Facility, Arkansas         *
Department of Corrections,              *
                                        *
        Defendants.                     *

_____

Submitted: April 15, 1998
Filed: July 6, 1998

_____

Before BOWMAN, Chief Judge,[1] McMILLIAN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

German Williams, an inmate in the custody of the Arkansas Department of Corrections (ADC), brought a pro se action under 18 U.S.C. § 1983. After a trial on the merits, the district court[2] ordered the entry of judgment against Captain L.D. Smith, David Cruiseturner, and nurse Debra Davis in the amount of $500 each. It found that these defendants[3] had violated Williams' eighth amendment rights by knowingly

_____

[1]The Honorable Pasco M. Bowman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 18, 1998.

[2]The action was tried before United States Magistrate Judge John H. Forster, Jr. His findings and conclusions were submitted in his recommendation to the Honorable Elsijane Roy, United States District Judge for the Eastern District of Arkansas, who adopted them after de novo review.

[3]The claims against the other defendants were dismissed, and Williams has not appealed from the dismissals.

requiring him to perform labor made dangerous by his medical condition, resulting in a back injury. Smith and Cruiseturner appeal,[4] and we affirm.

The facts, viewed most favorably to Williams as they must be, see Limited Flying Club, Inc. v. Wood, 632 F.2d 51, 52 (8th Cir. 1980), are as follows. In the summer and fall of 1994 the ADC had an inmate construction crew building an addition to the jail at the Jefferson Regional Jail Facility. There was a deadline for the project, and the crew had to do the necessary digging by hand because a backhoe broke down. Williams arrived at the Jefferson jail on July 8, 1994, and was assigned temporarily to a construction job on July 11. He had previously incurred a back injury in a car accident in February, 1993, and he also suffered from hypertension which required medication. Because of these problems he had been assigned a medical classification of M-2P when he entered the prison system. This classification meant that he was to do no prolonged stooping, walking, standing, or "strenuous physical activity for periods in excess of four hours."

Williams informed the classification officer at the jail of his physical restrictions and said that he could not do construction work because it was too strenuous for him and that he wanted to see a medical consultant before having to begin his work assignment on July 12. He was scheduled to appear before the classification committee on July 13 for a determination about whether his temporary assignment to a construction crew was appropriate.

Williams' attempts to avoid the work assignment were unsuccessful, and he had to begin construction work on July 12. His assigned work included toting twelve inch cement blocks, pushing wheelbarrows full of cement, and carrying steel rebars. On the same day he began work, he saw nurse Davis, an ADC health care provider, about his concern that the work would make his health problems worse. He told her about his

---

[4]Debra Davis did not appeal, and the judgment against her has been paid.

medical restrictions and back problems. She did nothing in response, however, because she did not yet have his medical records. Williams signed a release for the records, and Davis told him she would check on them right away. She never did, and when Williams was finally able to see the classification committee on July 27, two weeks after the original appointment, he was permanently assigned to construction without a review of his records.

Defendant Smith was the Captain and Chief of Security at the jail and he served on the classification committee. Before the July 27 committee meeting, Williams had informed Assistant Warden Clifford Terry about his problems and Terry raised them before the committee. There were indications at trial that two members of the committee would have preferred not to make a permanent assignment for Williams until after his medical records arrived and were available to the committee. Captain Smith wished to proceed without them because nurse Davis was not present to confirm whether or not she had requested the medical records. Smith's point of view prevailed, and a permanent assignment to general construction work was made without benefit of Williams' medical records. After Williams began work, he made several written requests to meet with Smith to discuss his situation but never received any response. He also informed Smith that he had a medical slip for two fifteen minute hot showers daily to help alleviate his back pain but that security was not allowing the showers. Smith never did anything to meet with Williams or to help him gain access to the prescribed showers.

Defendant Cruiseturner was responsible for placing work crews on ADC jobs and was the safety officer for construction. He also was in charge of classification of work crews for jobs. After Williams was placed on permanent construction duty by the classification committee, he was assigned to dig footings for the new jail. This required Williams to work with a pick and shovel for five hours at a time. His work day began at 7 in the morning and extended the whole day, with up to an hour break at noon. He informed his supervisor about his restrictions and the dangers to him of

this type of work, but no action was taken. On one occasion Williams reported that his high blood pressure was being aggravated by the heat, and he was sent to sit on a bench in the shade. Cruiseturner drove up while Williams was recovering on the bench. He ordered Williams back to work, and directed another inmate to destroy the bench. The magistrate found that Williams told Cruiseturner he was sick with high blood pressure but that Cruiseturner forced him to return to work anyway. Sometime before November 10, when Williams suffered a back injury, he spoke to Cruiseturner about the fact that the work he was required to do violated the medical restrictions on his activities, but Cruiseturner did nothing in response.

Williams continued his efforts to obtain an adequate evaluation of his medical condition by health care providers but met with little success. When Davis failed to obtain his medical records as promised, Williams took his own copies to the nurse but she would not accept them because they had not arrived from his former doctor. Williams signed another release to have the records sent, but they did not arrive because the jail sent the request to the wrong address.

Williams suffered a herniated disc while pushing a wheelbarrow uphill on November 10. At that time he was still being required to perform tasks that exceeded his medical limitations, and he had never been reevaluated by a doctor as promised even though his records finally had arrived at the jail approximately one week before the accident. As a result of the new injury he is further limited in his activities and is required to undergo continuing treatment.

Williams appeared pro se at the hearing before the magistrate judge. The attorney general represented the ADC defendants, and Davis had private counsel. Williams testified on his own behalf, and was subject to cross examination by both attorneys. A number of inmates and prison personnel also testified. After hearing all the evidence, the magistrate ruled for Williams, finding that Smith and Cruiseturner knew of his medical condition and still assigned him to work that was beyond his

capacity and ignored his pleas for assistance and further inquiry. The magistrate credited Williams' version of the events. He noted that Cruiseturner could not remember crucial details about his interaction with Williams and that Smith had ignored Williams' request for interviews and medical script for showers. He found that the evidence supported the inference that Cruiseturner and Smith knew about Williams' medical problems and deliberately took no action to prevent his working beyond his capacity. The court found that even though nurse Davis had been informed about Williams' problems and promised to obtain his medical records, she failed to take steps to protect his health and failed to have Williams reevaluated when the records finally arrived one week before his accident.

Based on these findings, the magistrate judge concluded that Cruiseturner and Smith knowingly compelled Williams to do work dangerous to his life or health and that Davis was deliberately indifferent to his medical needs. The court recommended a damage award of $500 each against Cruiseturner, Smith and Davis. The district court adopted the findings and recommendations of the magistrate after its de novo review and ordered judgment entered on the awards. Since the action was prosecuted pro se, no award of attorney fees was made.

Cruiseturner and Smith appeal, arguing that the findings of the court were clearly erroneous and its conclusions were legally incorrect. Smith contends that there was no proof he ignored any interview requests or that Williams was injured by not receiving showers. He also says that any denial of interview requests would not violate the eighth amendment because no classification change would have resulted in any event. Smith also asserts that he did not have any personal connection with Williams' working conditions, but was only a member of the classification committee. See Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). Cruiseturner argues that it was not shown that he was aware of Williams' serious medical need and that the assignments were appropriate to his medical classification. Finally, Cruiseturner contends that

Williams was not injured by being ordered off the bench when he was resting in the shade and that this isolated incident did not amount to an eighth amendment violation.

Williams' complaint, that his constitutional rights were violated by being forced to do work that could and did injure him, raises an eighth amendment challenge to the conditions of his confinement.  See Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993) (citing Bibbs v. Armontrout, 943 F.2d 26, 27 (8th Cir. 1991)).  In order to prevail on his claim that his work assignment was inappropriate because of his existing medical condition, he must show that the prison officials were deliberately indifferent to a serious medical need.  Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995).  The deliberate indifference standard requires a showing that the defendants had actual knowledge of a substantial risk to an inmate's health or safety, which is a question for the trier of fact and may be inferred from circumstantial evidence.  Farmer v. Brennan, 511 U.S. 825, 842-43 & n.8 (1994).  In this type of case, the plaintiff must prove that the defendants knowingly compelled him "to perform labor that is beyond an inmate's strength, dangerous to his or her life or health, or unduly painful."  Sanchez v. Taggart, No. 96-3824, 1998 WL 257364, *2-3 (8th Cir. May 22, 1998) (citing Madewell, 909 F.2d at 1207).

The evidence in the record supports the findings that Williams had a medical restrictions on his duties, that Smith and Cruiseturner knew of the restrictions, that his work assignment was contrary to the restrictions, and that neither official took action to rescue him from work that was dangerous to his health and that in fact resulted in damage to him.  See id.; see also Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985). Smith and Cruiseturner had responsibility for Williams' assignment to construction duties -- Cruiseturner as the safety director of the construction project and Smith as a predominate member of the committee which assigned Williams to the construction job. Both officials disregarded his requests for reevaluation of his assignment and his classification.  Although they both were aware of his requests and Smith was aware of the fact that his medical records had not been received, he was required to perform

tasks on the construction site that were dangerous for him. His medical situation was serious because Williams risked, and eventually experienced, debilitating back injury when he was assigned to tasks that exceeded his medical limitations despite his urgent request for a review of his status. See Aswegan, 49 F.3d at 464. There was therefore sufficient evidence for the district court to find Smith and Cruiseturner liable under § 1983 for violating Williams' eighth amendment rights.

Smith challenges the district court's findings, arguing that it was clear error for the court to find that he ignored Williams' requests for interviews or that his failure to act on Williams' complaint about showers resulted in injury. The court's findings on credibility are entitled to deference, and there is no indication that it clearly erred by crediting Williams' account of the request for interviews. See Prince v. Sargent, 960 F.2d 720, 721 (8th Cir. 1992). Contrary to Smith's assertion, the court did not find that Williams had been injured by the omitted showers, but rather considered the unfulfilled shower requests as part of the evidence supporting the inference that Smith knowingly ignored Williams' request for reevaluation. As in another recent case, the "evidence and inferences therefrom . . . established, [that Williams] told [Smith and Cruiseturner] that he had a medical condition restricting his ability to work and that confirmation of his physical limitations was in his file, and [they] failed to inquire further." Sanchez, 1998 WL 257364, at *2. Whether the defendants had actual knowledge of the risk to Williams is a factual inquiry, and the trier of fact found they had the requisite knowledge. These findings were not clearly erroneous.

Smith also argues that even if the court correctly found that he ignored the requests for reevaluation, there was no eighth amendment violation because the doctors who saw Williams did not change his work status and he was not involved in creating the harmful working conditions, citing Madewell, 909 F.2d at 1208. There was evidence, however, that the examining doctors did not change Williams' medical status because they had not yet received his records when they saw him, not because they had determined that a change was inappropriate. Smith was aware that the medical records

were not available, and his argument is not supported by the record. Smith was also involved in assigning Williams to dangerous work without reviewing the medical records and in spite of Williams' requests for reevaluation and pleas for help about this type of work being dangerous for him. This was sufficient to support the finding that Smith was "directly responsible for the deprivation of constitutional rights." Id.

Cruiseturner argues there is no evidence that Williams was damaged by being required to leave the bench, but Cruiseturner's liability was more broadly based on forcing Williams to perform dangerous tasks despite his knowledge of his medical problems. The magistrate judge cited the bench incident as an example of Cruiseturner's indifference to Williams' situation and the danger the work posed to his health, not as the sole basis for liability. The district court did not err by adopting the magistrate's conclusion that Cruiseturner violated Williams' eighth amendment rights.

Finally, Cruiseturner and Smith both allege that the district court relied on respondeat superior to find them liable. This contention fails because they were found liable for their own actions and the direct effect they had on Williams. The court did not rely on respondeat superior.

The record supports the findings and conclusions that Smith and Cruiseturner were deliberately indifferent to Williams' serious medical needs, that this resulted in a herniated disc, and that his rights under the eighth amendment were violated. The modest damage awards are supported by the record, and the judgment is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT