# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1532

_____

Randy G. Spencer

*Plaintiff - Appellant*

v.

Jackson County Missouri; Kenneth Conley

*Defendant*s

Carter; Williams; Anthony

*Defendants - Appellees*

Nurse Jane Doe

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 26, 2013
Filed: December 26, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Randy G. Spencer filed this action under 42 U.S.C. § 1983 against Jackson County, Missouri and employees in its detention center, alleging violation of his constitutional rights by Margo Carter, the supervisor of the inmate worker program, and case managers Gale Anthony and Brenda Williams. The district court granted the defendants' motion for summary judgment. Spencer appeals the dismissal of his First Amendment claims. After carefully reviewing the record, we reverse and remand.

I.

On this appeal from the grant of defendants' motion for summary judgment, we view all facts in the light most favorable to plaintiff Randy Spencer. Spencer was booked into the detention center in January 2005 on charges of tampering with a motor vehicle, assaulting a police officer, stealing over $750, and resisting arrest. Spencer's prior criminal record included a number of past charges of second degree burglary, stealing over $150, and parole violation. He was described in his detention center inmate worksheet as "[m]ature, cooperative, [and] non aggressive."

Spencer was approved for the detention center's Inmate Worker Program (IWP), also known as the "trustee program," on February 14, 2005. Inmates in the trustee program receive job assignments within the detention center and are paid for each shift, with an opportunity to earn more for additional work. They also receive a number of privileges and incentives. They are housed in a trustee module and are eligible for late nights, weekend contact visitation rewards, and access to popcorn, soda, and a movie player. One of Spencer's work assignments in 2005 was in the kitchen; inmates assigned to the kitchen receive extra food and may have one meal per work day in the break room area.

According to Spencer, he and his program supervisor Margo Carter (then Margo Hurse) had a good relationship during his 2005 stay in the IWP. After Spencer participated in a question and answer session for a university criminal justice seminar, Carter wrote him a letter on April 18 stating that she "sincerely want[ed] to thank" Spencer for his participation in the IWP and wished him "luck in [his] future lifelong endeavors." Spencer left the IWP in late April 2005 to enter a drug and alcohol treatment program which he successfully completed in May. He then requested reentry to the trustee program. His case manager, Marvin Walker, congratulated him on his completion of the treatment program and wrote that he would "get [him] back in the [trustee] program A.S.A.P." Spencer was again approved for the trustee program and remained in it until he left the detention center in June 2005.[1]

Spencer filed a lawsuit against Carter and other employees of the detention center in 2006, alleging that he had received inadequate medical and dental care there, lack of response to his requests and grievances, and retaliation by Carter. Spencer asserts that Carter received notice of the action because he sent her "interrogatories, requests for admissions and production of documents requests."

On October 17, 2009 Spencer returned to the detention center on a new charge of stealing over $750. He was at this time 53 years old and aside from the new charge his criminal record was the same as in 2005. He was again approved for the trustee program. Then on October 28, Spencer spoke to Carter while she was investigating an incident that occurred in the trustee module. Spencer claims that Carter recognized his voice and face during this conversation, during which he told her he was sorry for filing the lawsuit and expressed the hope he could stay in the trustee program. Carter replied, "I don't know." Then, in "what seem[ed] like only a few seconds," Carter came to tell him that he was being terminated from the program. Spencer was then

---

[1]The record is not clear as to the reason for Spencer's transfer in June 2005, but it was likely related to the disposition of the charges for which he was admitted to the detention center in January 2005.

terminated and moved from the trustee module to H module, a housing area without the special features of the trustee program.

One day after being terminated from the trustee program Spencer submitted a Request for Administrative Remedy form (known as a "JPO"), which is generally required before filing a formal grievance, asking Carter to "reconsider [her] decision." He wrote that "you wouldn't have even known about it had I not said something and I did that out of my heart because I was concerned if you were mad[] at me and that was because I thought we were friends at one time." Carter responded that "due to your past charges, behavior and actions you can not return to the I.W.P."

Carter later asserted in an affidavit that she had removed Spencer from the IWP "due to his penitentiary time, past behavior and actions in the [detention center]." She stated that she had reviewed his criminal history "and learned that he had a prior history involving stealing, tampering with a motor vehicle, assault on a police officer, resisting arrest and burglary in the 2nd degree." Spencer filed another JPO on November 4 stating that Carter had retaliated against him for filing a lawsuit by removing him from the program. Although the JPO was addressed to the detention center director, Carter signed the response which stated that "Lt. Carter was correct by reviewing your files + case management notes to remove you from the program."

Spencer submitted JPOs on November 9 and 10 to the inmate services administrator and to his H module case manager, Gale Anthony, requesting information on exhausting the grievance procedure. Anthony responded to both JPOs, writing "OK." Spencer sent another JPO on November 16, requesting a grievance form "regarding Lt. Carter retaliating against me." He also stated that he had previously written three JPOs on separate issues and had not received responses; he again requested grievance forms. As Spencer's case manager, Anthony was required under the center policy to give him a formal grievance form when requested. Anthony responded that Spencer would have to fill out the JPOs again. Spencer sent a JPO to

Anthony on November 17, again requesting four grievance forms. Anthony replied, "[w]rite reasons why you want a grievance form." Spencer then filed three JPOs on November 20 regarding his prior complaints, stating in each that Anthony had refused to give him grievance forms. Although the JPOs were addressed to various individuals, Anthony responded to all three, writing in one response that she "didn't refuse to give [Spencer] a grievance form" and that she told him to write to a different department.

Spencer filed a formal grievance form against Carter on November 23, stating that she had retaliated against him and that Anthony "tried to deny me this grievance for weeks." The next day Anthony entered "available cell" on a housing reclassification form and Spencer was transferred to D module from H module. Spencer complains that "H Module is basically for older inmates like myself" while D module houses "younger, aggressive inmates." Spencer reports that after he was moved to D module, another prisoner told him that an inmate "had recently been beat real bad in the module." On November 25 Spencer sent a JPO to Brenda Williams, his new case manager in D module, asking for four grievance forms because he "went through the JPO process at least twice with no satisfactory results." Williams replied that Spencer's grievances were resolved and "you do not have to aggree [sic] to the answers given you, but they are per policy and CM will not be issuing you another grievance form." Spencer asserted that on November 30, Williams and a guard came to D module and led him into the hall. While holding Spencer's JPO, Williams advised him that she and Anthony had moved him to D module and that he "wasn't going to get any grievance forms."

Spencer filed this action in February 2011 under 42 U.S.C. §1983. The district court dismissed his claims against Jackson County, detention center director Kenneth Conley, and unidentified nurse "Jane Doe." The summary judgment motion of defendants Carter, Anthony, and Williams was later granted on Spencer's claims of retaliation in violation of his First Amendment rights. Spencer appeals.

II.

Spencer argues that the district court erred in granting summary judgment on his claims of retaliation in violation of his First Amendment rights. We review de novo a grant of summary judgment, Sisneros v. Nix, 95 F.3d 749, 751 (8th Cir. 1996), and affirm only if there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a). We view "the facts in the light most favorable to the nonmoving party and giv[e] that party the benefit of all reasonable inferences that can be drawn from the record." Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012).

In order to demonstrate retaliation in violation of the First Amendment under 42 U.S.C. § 1983, Spencer must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (citing Naucke v. City of Park Hills, 284 F.3d 923, 927–28 (8th Cir. 2002)). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001) (citing Madewell v. Roberts, 909 F.2d 1203, 1206–07 (8th Cir. 1990)). The district court treated Spencer's claims as being for retaliatory discipline, against which prison officials may successfully defend by "showing 'some evidence' the inmate actually committed a rule violation." Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) (citing Goff v. Burton, 7 F.3d 734, 738–39 (8th Cir. 1993)). Spencer does not allege retaliatory discipline, however, nor do defendants claim that Spencer violated any prison rules. The "some evidence" standard thus does not apply here.

Spencer argues first that Carter retaliated against him for filing his lawsuit by removing him from the trustee program. It is well established that the right to file a

-6-

legal action is protected under the First Amendment. Goff, 7 F.3d at 736. Adverse actions which may show retaliation include denial of privileges, Revels, 382 F.3d at 876, or acts worsening an inmate's working conditions, Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007). The key question is whether the actions were taken in retaliation for engaging in protected activity. Spencer's removal from the trustee program could potentially be found to be an adverse action resulting in his loss of access to income, work opportunities, and housing advantages as well as other privileges.

In order to succeed on his claim, Spencer must show that an adverse action taken against him was "motivated at least in part" by his protected activity of filing a lawsuit against detention center employees. Revels, 382 F.3d at 876. Spencer's removal from the trustee program occurred almost immediately after he reminded Carter about his having filed a lawsuit against her. At that time Spencer had already been approved to enter the trustee program three different times. He was first approved when he initially arrived at the detention center in February 2005, again when he reentered in May 2005 after completing a drug treatment program, and for the third time in October 2009 when he entered on a new charge. The only change in Spencer's record between 2005 and 2009 was his October 2009 charge of stealing over $750, and Carter has not claimed that that was a disqualifying offense for participation in the trustee program. Moreover, that charge had not prevented him from being approved for entry into the trustee program in October 2009.

Carter has not explained how Spencer became disqualified from the trustee program when his record was essentially the same as when he entered it originally in February 2005, except for the new charge which had not prevented him from being readmitted in October 2009. Nor has she presented evidence that Spencer's record changed between his October 2009 approval for the trustee program and his later removal from that program. In a subsequent affidavit Carter claimed variously that her decision had been based on Spencer's "extensive twenty five year history and prior violent history in the penitentiary system" and that it was his "penitentiary time, past

behavior and actions in the Jackson County Detention Center." She has however not shown why Spencer's preexisting record did not disqualify him from being in the trustee program in 2005 or provided specifics of any disqualifying "behavior and actions." Viewing the facts in the light most favorable to Spencer, as we must on this motion for summary judgment, we conclude that there is a genuine dispute of material fact as to whether Carter's removal of Spencer from the trustee program in 2009 was motivated by the lawsuit he had filed against her in 2006.

Spencer further argues that Anthony and Williams retaliated against him for filing grievances by subsequently transferring him from the H housing module to the D module on November 24. An inmate has a First Amendment right to use prison grievance procedures, and it has been established in our circuit "for over twenty years" that retaliatory actions for filing a prison grievance are actionable. Nelson v. Shuffman, 603 F.3d 439, 449–50 (8th Cir. 2010). The module transfer here was an adverse action because D module housed younger and more violent offenders than H module according to Spencer's declaration. At the time of the transfer Spencer was 53 years old.

In addition to proving the other elements of retaliation, Spencer must prove that he would not have been transferred "but for an unconstitutional, retaliatory motive." Goff, 7 F.3d at 738. Goff addressed transfers between prisons, and we have applied the same standard to internal transfers in a civil commitment case, Beaulieu v. Ludeman, 690 F.3d 1017 (8th Cir. 2012). In Beaulieu, patients civilly committed in the Minnesota Sex Offender Program alleged internal transfer in retaliation for protected activity. 690 F.3d at 1024–27. An inmate at the Missouri Sexual Offender Treatment Center was similarly required to show in his retaliation case that his internal transfer "was causally related to [his] protected expression." Nelson, 603 F.3d at 450.

We conclude that Spencer presented sufficient evidence to create a genuine issue of material fact as to whether he would have been transferred from H module to D module but for his use of the grievance process. Spencer was transferred the day after filing his formal grievance against Carter, in which he had complained that Anthony was obstructing his efforts to obtain grievance forms. This timing is strong evidence that he was transferred in retaliation, cf. Nelson, 603 F.3d at 450, and defendants offered no nonretaliatory motive. The reclassification form signed by Anthony stated only "available cell" without further direction. Moreover, Williams told Spencer that she and Anthony had transferred him and that he would not receive grievance forms.

Spencer also argues that Anthony and Williams retaliated against him for his attempts to file a grievance against Carter by obstructing his access to the process. Filing a prison grievance has long been "protected First Amendment activity," Lewis, 486 F.3d at 1029, as has been the right of "access to the grievance process," Nelson, 603 F.3d at 450. Such retaliatory conduct is actionable under § 1983. Id.; see also Nei v. Dooley, 372 F.3d 1003, 1007 (8th Cir. 2004). Spencer's attempts to seek a remedy for his grievances through JPOs and to file formal grievances are precisely the steps required by the detention center grievance policy for inmates to follow. He thus was engaging in protected activity.

Spencer presented evidence indicating that Anthony and Williams took adverse action against him by obstructing his access to the grievance process, such as delaying or refusing him requested forms. This evidence included Anthony's directions to Spencer to fill out additional JPOs and to "[w]rite reasons why you want a grievance form" after he had requested a form multiple times. Anthony ultimately gave Spencer only one formal grievance form even though he had requested four. This violated the county's Formal Inmate Grievance Procedure which states that case managers will not refuse to give inmates formal grievance forms even when the informal process has not been exhausted. Spencer also presented evidence that instead of furnishing the

-9-

requested forms, Williams told him that all of his grievances had been resolved and that she would not issue him another form. Spencer further asserts that Williams came to his module accompanied by a guard and took him into the hallway to "intimidate" him, telling him that he would not receive any more grievance forms.

We conclude that Spencer presented a genuine issue of material fact as to whether the actions of Anthony and Williams were motivated at least in part by his attempts to use the grievance procedure. Spencer presented evidence that Anthony and Williams refused to give him grievance forms and were irritated by his use of the grievance process. At one point for instance, Williams came in person accompanied by a guard to tell Spencer that he would not receive more forms. Based on this record we conclude there is a genuine issue of material fact as to whether Anthony and Williams acted in retaliation for Spencer's efforts to file grievances.

The district court also granted qualified immunity to the defendants, and our review is de novo. Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004). Public officials are eligible for qualified immunity unless there are facts pled "showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right of an inmate to file a lawsuit is well established, Goff, 7 F.3d at 736, as is an inmate's First Amendment right to access the prison grievance process, Nelson, 603 F.3d at 449–50. Since Spencer has raised genuine issues of material fact as to whether defendants violated his First Amendment rights, the district court's grant of qualified immunity to the defendants was premature and must be reversed.

III.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, dissenting in part.

I agree with the majority that the grant of summary judgment with respect to appellees Williams and Anthony should be reversed. However, I would find that appellee Margo Carter has carried her burden on summary judgment and would therefore affirm the grant of summary judgment with respect to Spencer's claims against her.

Carter has demonstrated that Spencer cannot establish an essential element of his retaliation claim—namely that she took a sufficiently adverse action against him—because Spencer was unqualified for the privileges he claims were denied to him in violation of 42 U.S.C. § 1983. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that the moving party's burden on a motion for summary judgment, in cases in which the ultimate burden of persuasion at trial rests on the nonmoving party, can be satisfied by demonstrating that the nonmoving party cannot establish an essential element of its claim).

The majority focuses on the third element of Spencer's section 1983 claim requiring a showing of retaliatory motive. However, it overlooks that Spencer must ultimately prove the second element, that "the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the [protected] activity," to be successful on his claim. Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004). With respect to Carter, Spencer points to his removal from the IWP as the adverse action. The denial of privileges may be an adverse action in some cases, see Madewell v. Roberts, 909 F.2d 1203, 1204-06 (8th Cir. 1990); however, I disagree that a denial of privileges for which a prisoner is unqualified is a sufficient adverse action.

-11-

In Revels, we found that the appellant did not present sufficient evidence of adverse action, in part because he was not qualified for the privileges denied. 382 F.3d at 876-77. The appellant "admitted he had not requested [the privileges]. He also admitted he frequently [engaged in activity,] which would disqualify him for the privileges he sought. Without evidence he requested *or was qualified for such privileges*, his bare allegations do not show he suffered any adverse action." Id. (emphasis added).

In Madewell, on which Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) relies, we held the denial of privileges to be an adverse action under the section 1983 analysis. 909 F.2d at 1025, 1027. Unlike the facts before us, there was no indication in Madewell that the prisoners were unqualified for the privileges. Id. at 1026. In fact, the opposite is true. There, the official attested that the plaintiffs had "as much opportunity for [the privilege] as other inmates." Id. at 1025. Ultimately, the prisoner's allegations of adverse action, in the form of the denial of privileges for which they were qualified, was an adverse action to avoid summary judgment. Id. at 1026.

Viewing the facts in a light most favorable to Spencer, he is unable to establish an essential element of his claim. As Carter asserts in her affidavit, supported by the internal policy of the Jackson County Department of Corrections, Spencer's criminal history disqualified him from the IWP. The policy states that inmates will be disqualified if they "have been charged or convicted of . . . violent offenses." Carter presented uncontested evidence that Spencer's criminal history includes both assault on a police officer and resisting arrest. These offenses are violent. Therefore, Spencer was not qualified to be in the IWP, a conclusion unaltered by the fact that Spencer was initially admitted to the program.

Even if there is a disputed issue of material fact as to whether Carter was motivated by a desire to retaliate against Spencer, Carter's action in removing him

-12-

from the IWP was not sufficiently advers e because he was not qualified for the privileges he sought.  Accordingly, I woul d find that Carter has dem onstrated that Spencer  cannot establish an essential elem  ent  of his claim  , and, therefore, I respectfully dissent in part.

_____