IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

GRAY V. NEBRASKA DEPT. OF CORR. SERVS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GRAYLIN GRAY, APPELLANT,

V.

NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES ET AL., APPELLEES.

Filed March 17, 2015.    No. A-14-254.

Appeal from the District Court for Johnson County: DANIEL E. BRYAN, JR., Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Graylin Gray pro se.

Jon Bruning, Attorney General, and Ryan S. Post for appellees.

INBODY, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Graylin Gray, an inmate at the Tecumseh State Correctional Institution (TSCI), filed a complaint for retaliation against the Nebraska Department of Correctional Services (DCS) and several of its employees, alleging that he was subjected to frequent cell searches and a false misconduct report and denied toilet paper in retaliation for filing a civil complaint against DCS. The Johnson County District Court dismissed all of Gray's claims either as barred by sovereign immunity or for failure to state a claim. We affirm in part, and in part reverse and remand for further proceedings.

BACKGROUND

Gray filed a complaint on October 17, 2013, pursuant to 42 U.S.C. § 1983 (2012), against DCS, Robert P. Houston (director of DCS), Frank X. Hopkins (Deputy Director of Institutions), Brian Gage (Warden of TSCI), Aaron Rule, Jason Taylor, John LeDuc, and Dustin Schultz (Case

Managers at TSCI), Caralee Barker (Case Worker at TSCI), and Dennis Rader and Jason Krauss (Correctional Officers at TSCI). Gray specifically alleged he was filing his suit against each named individual in their official and individual capacities. Gray sought money damages and declaratory and injunctive relief.

Gray alleged that he filed a lawsuit against DCS on March 25, 2013. He further alleged that on April 22, he appealed a decision made by the Director of Review Committee that he remain in maximum custody, and that Houston reversed that decision and "promoted" Gray to medium custody. On April 27, case worker "Strandberg" (not a named defendant) entered Gray's cell to conduct a cell search. Gray understood that TSCI policy required that each cell be searched twice a month for contraband. However, after the search on April 27, Gray alleges his cell was subject to further searches on May 1, 23, 24, and 31 by Barker, Taylor, LeDuc, and Strandberg. Gray alleged that three of those searches resulted in his cell being left in a "dismantled condition," and on one occasion, his television was confiscated and when it was later returned, it no longer worked.

Gray also alleged that he was placed on room restriction from May 31 through June 4, 2013, and was denied access to the law library. He alleged that on June 2 he was denied toilet paper by "Bradley" (not a named defendant) and Barker. On June 21, Gray filed a state tort claim against Taylor for breaking his television. This was followed by cell searches conducted on June 26, 28, and 30, and July 1 and 7 by LeDuc, Strandberg, Taylor, Rader, and Krauss. Gray claimed his cell was left in a dismantled condition after four of those searches. Gray also alleged that during the June 30 search, Taylor questioned Gray about a receipt and disposal form related to his broken television, and during the July 1 search, Taylor confiscated Gray's television and filed a misconduct report against him. On July 10, Gray received a misconduct report from Schultz, stemming from an interview request made by Gray which allegedly violated regulations.

Gray alleged that the repeated cell searches, denial of toilet paper, and false misconduct reports were retaliation for his exercise of his right to seek redress from the prison through the use of a civil action complaint, tort claim, and grievance procedures. Gray claimed he exhausted grievance procedures available at TSCI.

Gray sought a declaratory judgment finding that his constitutional rights had been violated. He sought an injunction to stop the retaliatory conduct, and he requested compensatory damages of $50,000, and punitive damages of $50,000, against each defendant "jointly and severally."

On November 26, 2013, Hopkins, Gage, Rule, Barker, Taylor, LeDuc, Rader, Krauss, and Schultz filed a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6), alleging that Gray had failed to state a claim upon which relief can be granted. DCS filed a motion to dismiss on the same date pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1), claiming that it was protected by sovereign immunity. Gray filed an opposition to the motions to dismiss on December 9. We note that Houston did not file a motion to dismiss.

A hearing was held on the motions on December 16, 2013, and the court entered its order on December 18. The court concluded that Gray's action against DCS was barred by sovereign immunity to the extent he was seeking monetary damages against the State or its employees in their official capacities, but his claims for a declaratory judgment and injunctive relief were not

barred; however, the court concluded that Gray had failed to state a claim with respect to his claims for declaratory and injunctive relief and provided him with 20 days to amend.

The court dismissed Barker, Taylor, LeDuc, Rader, and Krauss on the basis that Gray failed to state a claim against them. The court concluded that Gray's complaint contained conclusory allegations without stating facts to support that the above individuals' actions were motivated by Gray's exercise of his protected action; however, the court granted Gray 20 days to amend.

The court concluded that with respect to Gray's allegations against Schultz, "the fact that a misconduct report was filed does not rise to a level of a constitutional violation" and Gray does not have a "right to be free from the filing of any misconduct reports against him." The court dismissed Schultz, but granted Gray 20 days to amend.

With respect to Hopkins, Gage, and Rule, the court concluded that Gray did not specifically allege personal participation by those individuals, and dismissed them without leave to amend.

On March 17, 2014, the court entered an order noting that Gray had not filed anything further and dismissed the entire case with prejudice. (Although Houston had not moved for dismissal, he was dismissed by virtue of this March 17 order).

Gray timely appealed.

## ASSIGNMENTS OF ERROR

On appeal, summarized and restated, Gray claims that the district court erred in dismissing his complaint for failure to state a claim.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss is reviewed de novo. *Bros. v. Kimball Cnty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015). When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Id.*

To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Moats v. Republican Party of Nebraska*, 281 Neb. 411, 796 N.W.2d 584 (2011). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id.*

## ANALYSIS

The district court's March 17, 2014, order dismissed Gray's entire complaint, concluding that all of his claims were either barred by sovereign immunity or that he had failed to state a claim. We review whether dismissal was proper with respect to each defendant.

*DCS and Named Individuals in Their Official Capacities.*

The district court dismissed Gray's claims for monetary damages against DCS and the named individuals in their official capacities on the basis of sovereign immunity and, after providing Gray with an opportunity to amend, dismissed Gray's claims for injunctive relief and a

declaratory judgment on the basis that he failed to state a claim. We conclude that all of Gray's claims against DCS and the named individuals in their official capacities are barred by sovereign immunity.

In the absence of a waiver, sovereign immunity bars all suits against the State, regardless of the relief sought. See *Anthony K. v. State*, 289 Neb. 523, 855 N.W.2d 802 (2014) (*Anthony I*). Nebraska has not waived its sovereign immunity with regard to § 1983 suits brought against it. *Id*. Neither did the enactment of § 1983 abrogate the State's Eleventh Amendment immunity by creating a remedy against the State. *Id.* In other words, the State cannot be sued under § 1983 for money damages or prospective declaratory or injunctive relief. See *id*. (disapproving its prior statement in *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013), that Eleventh Amendment immunity does not bar an action against a state or state officials for prospective declaratory or injunctive relief).

A suit against a state agency is a suit against the State and is subject to sovereign immunity. *Anthony K. v. Neb. HHS*, 289 Neb. 540, 855 N.W.2d 788 (2014) (*Anthony II*). The Nebraska Department of Corrections is a state agency. See *Perryman v. Nebraska Dep't of Corr. Servs.*, 253 Neb. 66, 568 N.W.2d 241 (1997) *disapproved on other grounds, Johnson v. Clarke,* 258 Neb. 316, 603 N.W.2d 373 (1999). Likewise, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. See *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762, 769 (1999) *disapproved on other grounds*, *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004) (citations omitted). As such, it is no different from a suit against the State itself. *Id*. Neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Id*.

In the present case, because the DCS is a state agency, Gray's suit under § 1983 is a suit against the state and is barred by sovereign immunity. See *Anthony II*, *supra*. Likewise, Gray's suit against the named state officials in their official capacities is a suit against the officials' office, and is also barred by sovereign immunity. *See Shearer*, *supra*. Although the district court dismissed Gray's claims for injunctive and declaratory relief for failure to state a claim, and not on the basis of sovereign immunity, a proper result will not be reversed merely because it was reached for the wrong reason. *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013). We note that the district court's determination in this regard may have been in reliance on *Michael E. v. State*, *supra,* which was not yet disapproved at the time the district court entered its December 18, 2013, order. For the reasons set forth herein, we affirm the dismissal of Gray's claims against DCS and the named individuals in their official capacities.

*Named Individuals in Their Individual Capacities*.

The court dismissed Barker, Taylor, LeDuc, Rader, and Krauss on the basis that Gray failed to state a claim against them, concluding that Gray's complaint contained "conclusory allegations" without stating facts to support that the above individuals' actions were motivated by Gray's exercise of his protected action. The court concluded that with respect to Gray's allegations against Schultz, "the fact that a misconduct report was filed does not rise to a level of a constitutional violation" and Gray does not have a "right to be free from the filing of any misconduct reports against him." With respect to Hopkins, Gage, and Rule, the court concluded that Gray did not specifically allege personal participation by those individuals, and dismissed

them without leave to amend. The court made no specific findings with respect to Houston's dismissal.

State courts are required to follow federal precedent when hearing actions brought under § 1983. *Kellogg v. Nebraska Dep't of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005). In order to demonstrate retaliation in violation of the First Amendment under § 1983, a plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907 (8th Cir. 2013). Adverse actions which may show retaliation include denial of privileges, see *id.*, or harassing and retaliatory cell searches, see *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991). An inmate also has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights. *Sanders v. Hobbs*, 773 F.3d 186 (8th Cir. 2014). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Spencer*, *supra* at 911.

Gray alleged that he filed a lawsuit against DCS on March 25, 2013, that on April 22 he appealed a decision made by the Director of Review Committee, and that on June 21 he filed a state tort claim against Taylor. The filing of an inmate lawsuit or a prison grievance is a protected First Amendment activity. See *Haynes v. Stephenson*, 588 F.3d 1152 (8th Cir. 2009). Gray alleged that 4 days after his April 22 appeal, he was subjected to five cell searches within a month by Barker, Taylor, and LeDuc, although Gray understood that TSCI policy only required each cell to be searched twice a month. Gray alleges that his cell was left dismantled after the searches and that Taylor broke his television. Gray further alleged that he was placed on room restriction and denied access to the law library and denied toilet paper by Barker. Gray alleged that 5 days after he filed his state tort claim against Taylor, his cell was searched on five more occasions over a 2-week period by LeDuc, Taylor, Rader, and Krauss. Gray alleged that his cell was again dismantled during these searches. Gray further alleged that Taylor questioned Gray about his broken television, and during the July 1 search, Taylor confiscated Gray's television and filed a misconduct report against him. On July 10, three days after one of the cell searches, Gray received a misconduct report from Schultz. Gray alleged that the repeated cell searches, denial of toilet paper, and false misconduct reports were retaliation for his exercise of his right to seek redress from the prison through the use of a civil action complaint, tort claim, and grievance procedures.

Complaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Kellogg v. Nebraska Dep't of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005) (citations omitted). Construing Gray's complaint liberally in his favor, we conclude that the above allegations state a claim for retaliation against Taylor, Barker, LeDuc, Rader, Krauss, and Schultz. Gray alleged he engaged in protected activity, and that shortly after that, the above defendants performed more cell searches than policy required and dismantled his cell, denied him certain privileges, and filed false misconduct reports against him. A plaintiff can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendants could

reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269 (6th Cir. 2001). Construing Gray's complaint liberally, his allegations arguably establish a temporal proximity between his protected conduct and the adverse actions from which causation could be inferred. Therefore, while we do not make any comment on the ultimate merit of Gray's retaliation claims against these defendants, we conclude that Gray did more than conclusorily allege that the defendants retaliated against him for engaging in protected conduct, and the district court erred in dismissing Gray's claims against Taylor, Barker, LeDuc, Rader, Krauss, and Schultz, in their individual capacities, for failure to state a claim.

Houston as the director of DCS, Hopkins as Deputy Director of Institutions, and Gage as the warden of TSCI are supervisors. The standard by which a supervisor is held liable under § 1983 in his or her individual capacity for the actions of a subordinate is extremely rigorous. *Potter v. Bd. of Regents of the Univ. of Neb.*, 287 Neb. 732, 844 N.W.2d 741 (2014). The plaintiff must establish that the supervisor personally participated in the unconstitutional conduct or was otherwise the moving force of the violation by authorizing, approving, or knowingly acquiescing in the unconstitutional conduct. *Id*. Gray's complaint contains no allegations whatsoever against Houston, Hopkins, or Gage regarding their personal participation or authorization, approval, or acquiescence in the alleged unconstitutional conduct against Gray. We therefore affirm the district court's dismissal of these defendants for failure to state a claim.

Gray's complaint also contains no specific allegations against Rule; there is nothing in the complaint, even construed liberally in Gray's favor, that would state a claim under § 1983 against Rule. The district court therefore properly dismissed Rule for failure to state a claim.

## CONCLUSION

We affirm the district court's dismissal of Gray's complaint with respect to DCS and all named individuals in their official capacities. We further affirm the district court's dismissal of Houston, Hopkins, Gage, and Rule in their individual capacities. We reverse and remand for further proceedings Gray's claims against Taylor, Barker, LeDuc, Rader, Krauss, and Schultz, in their individual capacities only.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.