IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

GRAY V. NEBRASKA DEPT. OF CORR. SERVS.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GRAYLIN GRAY, APPELLANT,

V.

NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES ET AL., APPELLEES.

Filed May 1, 2018.    No. A-16-1218.

Appeal from the District Court for Johnson County: DANIEL E. BRYAN, JR., Judge. Affirmed.

Graylin Gray, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellees.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

### INTRODUCTION

Graylin Gray, an inmate at the Tecumseh State Correctional Institution (TSCI), filed a complaint for retaliation against several defendants in the district court for Johnson County. Some defendants were dismissed in a prior action. In the present matter, Gray appeals, pro se, from the district court's order granting summary judgment in favor of the remaining defendants and dismissing Gray's action entirely. We affirm.

### BACKGROUND

Gray did not provide a copy of his complaint in the record for this appeal; accordingly, we take judicial notice of *Gray v. Nebraska Department of Correctional Services*, No. A-14-254, 2015 WL 1243027 (Neb. App. March 17, 2015) (selected for posting to court website) to provide context for the present appeal. Gray filed a complaint pursuant to 42 U.S.C. § 1983 (2012) against: the

- 1 -

Nebraska Department of Correctional Services (DCS); Robert P. Houston (Director of DCS); Frank X. Hopkins (Deputy Director of Institutions); Brian Gage (Warden of TSCI); Aaron Rule, Jason Taylor, John LeDuc, and Dustin Schultz (Case Managers at TSCI); Caralee Barker (Case Worker at TSCI); and Dennis Rader and Jason Krauss (Correctional Officers at TSCI). Gray alleged he was suing each named individual in their official and individual capacities. He claimed the defendants engaged in retaliatory conduct against him because he exercised his right to seek redress from the prison through the use of a civil action complaint, tort claim, and grievance procedures. The alleged retaliatory conduct included room restrictions, denial of access to the law library, denial of toilet paper, excessive cell searches which left his cell in disarray, and misconduct reports being filed against him. Gray sought money damages as well as declaratory and injunctive relief.

A motion to dismiss was filed on behalf of all of the defendants alleging that Gray had failed to state a claim upon which relief could be granted. After a hearing, the district court dismissed Gray's entire complaint, concluding all of Gray's claims were either barred by sovereign immunity or failed to state a claim for which relief could be granted. Gray appealed, and this court affirmed the dismissal as to DCS and all named individuals in their official capacities. We also affirmed the dismissal of Gray's action against Houston, Hopkins, Gage, and Rule in their individual capacities. However, we concluded the district court erred in dismissing Gray's claims against Taylor, Barker, LeDuc, Rader, Krauss, and Schultz in their individual capacities because Gray had stated a claim that did more than make conclusory allegations that those defendants retaliated against him for engaging in protected conduct. We reversed and remanded the cause for further proceedings against Taylor, Barker, LeDuc, Rader, Krauss, and Schultz ("remaining defendants") in their individual capacities.

On June 22, 2015, following the remand of this court's decision discussed above, the remaining defendants filed a motion for summary judgment as to the remaining claims against them in their individual capacities. In support of the motion for summary judgment, the defendants sought to submit, among other exhibits, an excerpt from TSCI's "Post Orders" (exhibit 1). The remaining defendants also filed a motion for a protective order of that exhibit, requesting that the exhibit "be reviewed by the Court *in camera*, and not [be] filed with the clerk or be served upon [Gray]" because "[i]t is not made available to inmates or the general public." The exhibit contains, in relevant part, two pages of TSCI policy regarding the frequency, procedure, timing, and objective of "Room Searches."

On August 10, 2015, a telephonic hearing took place during which several motions were addressed, including the defendants' motion for a protective order for exhibit 1. Over Gray's objection, the district court agreed to a protective order for the exhibit. The court stated the exhibit was going to be considered by the court for purposes of summary judgment, but "it's not something that's going to be divulged to either you or to any other inmates or to the general public." Gray argued he was entitled to see any information upon which the court would be relying to make its decision based on the rules of civil procedure. The district court indicated it understood Gray's argument and the conflict in the civil procedure rules. However, the court explained "basically what trumps them is the State statute and the confidential nature," and stated it would grant the defendants' motion for protective order. The defendants' attorney was directed to prepare and

submit the protective order with the exhibit. (A written order granting the protective order for exhibit 1 was not entered until February 25, 2016.)

Also during the August 10, 2015, telephonic hearing, the defendants' motion for summary judgment was argued. The district court entered an order on August 11, denying that motion. The court's order stated that because it had previously stayed discovery by Gray, the motion was "premature until [Gray's] discovery [was] completed and he [was given] the opportunity to submit any and all evidence at his disposal."

On December 28, 2015, the remaining defendants again filed a motion for summary judgment. A hearing was held on February 22, 2016. In an order entered on February 25, the district court stated that Gray filed an action under 42 U.S.C. § 1983 for violation of his First Amendment rights under the United States Constitution; namely, that the defendants retaliated against him for seeking redress from the prison by filing a civil action complaint and a tort claim, and his use of the prison grievance system. The order went on to say that Gray was requesting a permanent injunction against the defendants to cease their retaliation against him, as well as a request for compensatory and punitive damages. The order pointed out the previous denial of the defendants' motion for summary judgment because discovery was not yet complete. Now finding that discovery was complete, the district court found the following facts to be undisputed with regard to Gray's complaint (we set them out in detail since we do not have Gray's complaint in the record before us, and these factual findings explain the dismissal of certain defendants at this point in time):

1. [Gray] at all relevant times was an inmate of [DCS] residing at [TSCI] in Johnson County, Nebraska.

2. Between April of 2013 and July of 2013, the Defendants searched [Gray's] cell on ten separate occasions.

3. The TSCI Post orders require that every inmate's cell be searched a minimum of twice per month.

4. TSCI staff are trained to leave an inmate's cell in essentially the same condition as found prior to the search.

5. The condition of [Gray's] cell after each search is disputed by the parties.

6. On June 2, 2013, at 8:00 a.m., [Gray] had his designated shower time.

7. Later that day, on June 2, 2013, at 1:10 p.m., [Gray] pushed the call button in his cell to request extra toilet paper.

8. [Gray] asked Defendant Barker for extra toilet paper at this time.

9. Defendant Barker informed [Gray] he could not obtain extra toilet paper at that time because it was not a designated supply time.

10. Designated supply times [are] times when [Gray] can pick up extra toilet paper. These times are outlined . . . [in] TSCI's inmate handbook, which states: Supplies from the Control Center . . . may be obtained during approved scheduled time out of the cell, [such as] [s]howers, phone time, cell cleaning and dayroom.

11. [Gray] had previously received a copy of the handbook.

12. [Gray] was eventually allowed to obtain extra toilet paper during second shift on June 2, 2013.

13. On June 2, 2013, second shift began at 2:00 p.m. and lasted until 10:00 p.m.

14. On December 18, 2009, [Gray] purchased a television from another inmate. [Gray] wrote that the serial number of this television was [***E4403]. [Gray] signed a registration form for this purchase.

15. Sometime in 2012, TSCI experienced a power cut.

16. The power cut meant that [Gray's] television would not work temporarily. [Gray] was not aware that there was a power cut and erroneously thought his television set was permanently broken.

17. On August 12, 2012, thinking his television set was broken, [Gray] completed and signed a property disposal form to dispose of his television set. On this form, [Gray] wrote that the serial number of this television was [***E4403].

18. This is the same serial number as indicated on his December 18, 2009[,] registration form.

19. The property disposal form was witnessed by Corporal Howell on August 14, 2012. Corporal Howell indicated that the television was disposed of and removed.

20. TSCI's internal records show that [Gray's] television set was disposed of on August 14, 2012.

21. On July 1, 2013, Defendant Taylor noticed that [Gray] still had a television set in his cell.

22. Defendant Taylor inspected [Gray's] television set; he noticed that the television was sanded down in many places. He also found that the serial number of the television was scratched away on the back.

23. Defendant Taylor found another area on the television set where the serial number had not been scratched off. The serial number for this television was [***E4562].

24. The serial number on the television Defendant Taylor inspected in 2013 was different than the serial number indicated by [Gray] for the television he bought back in 2009 and disposed of in 2012.

25. Defendant Taylor confiscated the television and gave [Gray] a misconduct report for having an unauthorized item. [Gray's] discipline was upheld at a Unit Disciplinary hearing and [Gray] was given fourteen (14) days of room restriction.

26. On July 3, 2013, Defendant Schultz was sorting the mail from housing unit 2's mailbox.

27. While sorting, Defendant Schultz found an inmate interview request form from [Gray] amidst the rest of housing unit 2's mailbox.

28. On July 3, 2013, [Gray] was assigned to housing unit [1].

29. Defendant Schultz disciplined [Gray] for being in an unauthorized area because housing unit 2 was not an authorized area for [Gray], [because he] was assigned to housing unit 1.

30. The charges were later dropped.

31. [Gray] did file a State Tort Claim for damage to his television by TSCI staff.

The district court then addressed Gray's assertion of "four instances of retaliation against him." The first was that "various Defendants retaliated against him by searching his cell and leaving it in disarray on a number (10) [of] occasions between April 2013 and July 2013." The

court concluded that the TSCI regulations require that inmate cells be searched a minimum of twice per month, "[s]o the fact that [Gray's] cell was searched more than twice per month without more is not evidence of retaliation." However, the court also concluded, "The condition of [Gray's] cell after each search is in factual dispute."

Gray's second instance of retaliation involved defendant Barker's denial of extra toilet paper. The court stated, "The undisputed evidence is that inmates may only request extra supplies at authorized times, and [Gray] was aware of that limitation." Further, the court pointed out that Gray was able to obtain extra toilet paper at the authorized time later that same day. The court concluded there was no constitutional violation by Barker, and therefore granted Barker's motion for summary judgment and dismissed Gray's claim as to this issue.

Gray's third assertion of retaliation involved defendant Taylor's confiscation of Gray's television, and his subsequent disciplining of Gray for having an unauthorized item (the television). The district court concluded, "The undisputed evidence is that [Gray] was in possession of an unregistered television" and "he was disciplined for such violation." The court concluded Gray actually violated a prison rule and was punished, and therefore, granted Taylor's motion for summary judgment and dismissed Gray's claim as to this issue.

Gray's fourth assertion of retaliation involved defendant Schultz' disciplining of Gray for being in an unauthorized area. The district court found there was circumstantial evidence Gray may have been in an unauthorized area, and "[a]pparently TSCI accepted [Gray's] explanation and any charges were dismissed." The court granted Schultz' motion for summary judgment and dismissed Gray's claim as to this issue.

With regard to Gray's claim regarding cell searches leaving his cell in disarray, the court stated in its February 25, 2016, order:

Defendants are requesting that this court make credibility judgments as to whether [Gray's] testimony is true or not. It is not the place for a summary judgment to make final credibility determinations on genuine issues of material fact. This court will not make a legal finding that an inmate's testimony standing alone unsupported by any other evidence is not sufficient to raise a genuine issue of material fact in a retaliation claim. The ultimate decision is for the trier of fact.

In summary, Gray's claims against Taylor and Schultz were dismissed at this time. The only remaining claim was against Barker, LeDuc, Rader, and Krauss (in their individual capacities) regarding the condition of Gray's cell following cell searches.

On July 25, 2016, Barker, LeDuc, Rader, and Krauss filed another motion for summary judgment for the remaining claim against them. Gray filed a motion for summary judgment on October 20, as to Taylor (who had been dismissed in the February 25, 2016, order) and Krauss.

The hearing on both motions for summary judgment was held telephonically on December 5, 2016. The defendants submitted into evidence affidavits from Barker, LeDuc, Rader, and Boris Illic (Public Information and Litigation Officer at TSCI), and two "Memorandum and Order[s]" from the lawsuit filed in federal court which Gray claims contributed to the retaliation against him. The orders from the federal case show that the court denied Gray's motion for summons, and dismissed his claims. Gray submitted into evidence: (1) the defendants' answers to his fourth request for production, which included Gray's disciplinary misconduct record; (2) the defendants'

answers to his interrogatories, which contained several documents detailing TSCI employee job descriptions, TSCI rules and regulations, and two search reports documenting searches of Gray's cell on May 24 and June 26, 2013; and (3) his own affidavit asserting that Barker, LeDuc, and Rader were aware of Gray's federal lawsuit against them, and that they, along with Krauss, all intentionally left his cell "in disarray" after they searched it.

In its order entered on December 6, 2016, the district court granted the motion for summary judgment in favor of Barker, LeDuc, Rader, and Krauss, and denied Gray's motion for summary judgment. The order compared the evidence submitted for summary judgment filed on July 25, 2016, with the evidence submitted in support of the defendants' motion for summary judgment filed on June 22, 2015, which the court had denied because discovery was incomplete at that time (as discussed above). The court found that after discovery was completed, Gray did not submit any evidence of the condition of his cell after the searches. The court stated that unlike the order partially denying the defendants' motion for summary judgment on February 25, 2016, general allegations were insufficient because Gray had now admitted "he was not present during or at the completion of the cell searches" which were the subject of the remaining cause of action in the suit.

Specifically, the court stated:

Because [Gray] has now admitted he has no personal knowledge of whether the condition of his cell (disarray) was actually done by the Defendants while they conducted their required cell searches[,] it means he has failed to present a prima facia [sic] case that the cell searches conducted were retaliatory. [Gray] has offered no independent evidence of the condition of his cell after each search. It would be speculation for this court to proceed with this lawsuit. At most, [Gray] would only be able to testify as to the condition of his cell when he returned. [Gray] was in a two person cell. He would be offering no direct evidence of who actually did the dismantling of his cell. Allegations of retaliation must be more than speculative and conclusory.

The court concluded there was no genuine issue of material fact and granted the motion for summary judgment filed by Barker, LeDuc, Rader, and Krauss, and denied Gray's motion for summary judgment. Gray appeals from the December 6, 2016, order.

ASSIGNMENTS OF ERROR

Gray listed seven assignments of error, but only put forth arguments for three of his assigned errors in his brief. In the absence of plain error, an appellate court considers only claimed errors which are both assigned and discussed. *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017). We find no plain error as to the matters not argued, and therefore we consider only the three assignments of error argued in Gray's brief. Restated, Gray claims the district court erred by (1) granting the defendants' motion for a protective order for exhibit 1, (2) granting the defendants' motion for summary judgment, and (3) denying his motion for summary judgment without a separate hearing.

STANDARD OF REVIEW

Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law. *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016). And an appellate court independently reviews questions of law decided by a lower court. *Id.*

ANALYSIS

*Protective Order for Exhibit 1.*

Gray assigns the district court erred by granting the defendants' motion for a protective order for exhibit 1, the excerpt from the TSCI "Post Orders" regarding cell searches at TSCI. He previously argued to the district court that he has a right to anything relevant to his claim or any defense against it. He argues on appeal that "justice" did not require the protective order. Brief for appellant at 6.

Although Gray could not appeal this issue at the time it was decided, it is properly before this court in his appeal from the district court's order granting summary judgment in favor of the defendants. See, *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989) (order granting or denying motion for protective order is not final judgment or decision for purposes of appeal); *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995) (discovery order can be reviewed on appeal from final judgment).

Citing to *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011), the defendants assert the district court has broad discretion to enter protective orders and that "[p]rison security trumps the curiosity of an inmate on appellate review under an abuse of discretion standard." Brief for appellee at 7. Gray also acknowledges this authority, but suggests the information in exhibit 1 regarding the requirement that every inmate's cell be searched a minimum of twice per month did not require protection.

It is true that the law gives trial courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information. *Gonzalez v. Union Pacific RR. Co., supra.* The Nebraska Supreme Court has stated:

> The U.S. Supreme Court has interpreted the language of § 6-326(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." The Court explained that the "trial court is in the best

position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."

*Gonzalez*, 282 Neb at 75, 803 N.W.2d at 448, quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).

The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *O'Brien v. Cessna Aircraft Co., supra*. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

Parties are generally entitled to discovery regarding any nonprivileged matter that is relevant to any claim or defense. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). Unlike protective orders intended to prevent the disclosure of trade secrets or other confidential research, development, or commercial information to the public or industry competitors, the protective order here prevented Gray, a party, from having access to evidence submitted by the defendants in support of their motion for summary judgment.

The Supreme Court of Nebraska has recognized "that prisons 'are not beyond the reach of the Constitution' and that prisoners must be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Meis v. Grammer*, 226 Neb. 360, 366, 411 N.W.2d 355, 359 (1987), quoting *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). The U.S. Constitution guarantees a prisoner a right to access the courts. *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016). Meaningful access to the courts is the capability to bring actions seeking new trials, release from confinement, or vindication of fundamental civil rights. *Id.*

However, simply because prison inmates retain certain constitutional rights does not mean that those rights are not subject to restrictions and limitations. *Meis v. Grammer, supra*. Maintaining institutional security and preserving internal order and discipline are essential prison goals which may require the limitation of some of a prisoner's constitutional rights. *Id.*

Exhibit 1 (the TSCI "Post Orders" excerpt) may be relevant to Gray's claim for retaliatory cell searches in so far as it established the minimum number of cell searches required per month, as well as the expected condition of the cell following a search. However, the district court had to weigh Gray's interest in viewing the document against the defendants' interest in keeping it confidential. This required a balancing of Gray's rights to discovery and to bring actions seeking to vindicate a fundamental right (to be free from retaliatory cell searches) against the State's legitimate need for institutional security, order and discipline, and the threat to that need posed by releasing prison procedures regarding searches of prisoners' cells to an inmate. The court discussed the order with Gray at the hearing on August 10, 2015, and explained that it had found the necessity of the State's interest outweighed Gray's interest in viewing the procedures.

The trial court was in the best position to weigh fairly the competing needs of the parties, and Gray bears the burden of showing that the ruling was an abuse of discretion. We find nothing in the record, Gray's arguments, or the court's reasoning that demonstrates that the lack of access to exhibit 1 unfairly deprived Gray of his substantial right to vindicate his fundamental civil right to be free of retaliatory cell searches. This is particularly so since the only factual finding made by

the district court pertinent to exhibit 1 was that "[t]he TSCI Post orders require that every inmate's cell be searched a minimum of twice per month." And this was a fact of which Gray was aware without having access to exhibit 1. We find no abuse of discretion by the district court in entering a protection order for exhibit 1.

*Summary Judgment.*

Gray assigns the district court erred by granting the defendants' motion for summary judgment. The main purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled. *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016). After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Benard v. McDowall, LLC*, 298 Neb. 398, 904 N.W.2d 679 (2017).

Gray's remaining claim is that the defendants engaged in retaliatory action against him because he exercised his right to seek redress from the prison through the use of a civil action complaint, tort claim, and grievance procedures. He claims the defendants left his cell in disarray after excessive searches between April 2013 and July 2013, thus demonstrating retaliatory conduct.

The right to be free from retaliation for utilizing a prison grievance process is a right protected by the First Amendment. See *Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013). And, it is well established that the right to file a legal action is protected under the First Amendment. *Spencer v. Jackson County Mo.*, 738 F.3d 907 (8th Cir. 2013). In order to demonstrate retaliation in violation of the First Amendment under § 1983, a plaintiff "must show that '(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Saylor v. Nebraska,* 812 F.3d 637, 645 (8th Cir. 2016) (citation omitted). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson County Mo.*, 738 F.3d at 911 (citation omitted).

While Gray may have established that he engaged in a protected activity, we agree with the district court that Gray failed to present evidence that any of the defendants took adverse actions against him. The defendants submitted the affidavits for Barker, LeDuc, and Rader which denied any retaliatory motive behind the cell searches, and denied leaving the cell in disarray after the searches. The burden then shifted to Gray to produce contradictory evidence that exercising his constitutional right to file legal actions or use the prison grievance procedures was the motivation for the cell searches and the alleged condition of his cell. However, Gray admitted he was not present during the cell searches or at the conclusion of the searches.

Even when viewing the evidence in the light most favorable to Gray and giving him all reasonable inferences deducible from the evidence, nothing in the record beyond Gray's mere allegations supports his claim that the cell searches were retaliatory. The 10 alleged searches between April and July 2013 do not demonstrate an excessive number of searches in light of the minimum cell search requirement being two searches per month. There is also no evidence beyond

Gray's allegations that shows any level of disarray or destruction resulting from searches conducted by any of the defendants. LeDuc's affidavit does contain testimony that during a search that occurred in "the early months of 2013," he set some of Gray's belongings on his bed. However, after the search was completed, he asked if Gray wanted his belongings returned to their original places. Gray did not respond, so LeDuc left the belongings on the bed. Gray has produced no evidence that this search, or any other search, occurred in any manner that would indicate retaliatory conduct by these defendants. As pointed out by the district court, Gray admitted having no personal knowledge of whether his cell being in disarray was actually caused by the defendants as a result of them conducting cell searches. Gray was in a two-person cell and, other than the instance described by LeDuc, Gray was not present for the cell searches. Gray could only testify as to the condition of his cell when he returned to it.

In summary, Gray's general allegations that his cell was excessively searched and left in disarray in retaliation for filing legal proceedings or for using the prison grievance procedures are not enough to meet the burden to establish that exercising his constitutional right was the motivation for the searches that took place. Even viewed most favorably to Gray, there is simply no evidence indicating that these defendants were responsible for excessive searches of Gray's cell or for his cell being in disarray. Not only was there no evidence of any adverse action taken against Gray by these defendants which was motivated at least in part by the exercise of Gray's protected activity, there was no evidence of any adverse action by these defendants at all. Therefore, the defendants are entitled to judgment as a matter of law, and the district court's order granting summary judgment in their favor is affirmed.

*Separate Hearing on Gray's Motion for Summary Judgment.*

Gray assigns that the district court erred by not having a separate hearing on his motion for summary judgment. Gray claims the district court denied him an opportunity to make his case because the court hung up the telephone after the hearing on the defendants' motion without hearing his motion separately. However, the district court's December 6, 2016, order specifically indicates that both Gray's motion for summary judgment and the defendants' motion for summary judgment were taken up on December 5.

Gray's assignment of error amounts to an argument that he was not accorded due process, apparently because both motions for summary judgment were taken up at the same time and Gray did not have an opportunity for a separate hearing on his motion. The concept of due process of law is a nebulous one. *McGreevy v. Bremers*, 199 Neb. 448, 259 N.W.2d 477 (1977). Due process is not a fixed, inflexible procedure which must be accorded in every situation. *Id.* The requirements of due process vary with the circumstances involved. *Id.* However, in general terms, a litigant has the due process right to adequate notice or of the opportunity to be heard. *ML Manager v. Jensen*, 287 Neb. 171, 842 N.W.2d 566 (2014).

We conclude Gray had an adequate opportunity to be heard and present his evidence and arguments to support his motion for summary judgment. Both motions for summary judgment were scheduled for the same hearing, and both Gray and the attorney for the defendants appeared telephonically. Gray submitted exhibits, including his own affidavit, confirmed that the court had his brief on the matter, and made further arguments on the record. The court specifically asked Gray, "Now, and that's all of the exhibits you wanted to submit, correct?" To which Gray

responded, "Yes, Your Honor." Gray fails to identify any prejudice resulting from this consolidated hearing on both motions. The district court considered the evidence and arguments received from Gray and the defendants, and reached its decision accordingly. We find no violation of Gray's right to due process in the record before us, and affirm the district court's denial of Gray's motion for summary judgment.

CONCLUSION

For the reasons set forth above, we affirm the district court's order granting the protective order for exhibit 1, as well as its December 6, 2016, order granting the defendants' motion for summary judgment in favor of Barker, LeDuc, Rader, and Krauss, and denying Gray's motion for summary judgment.

AFFIRMED.